Troy B. Froderman (012717)
Scott C. Ryan (026791)
FR LAW GROUP PLLC
4745 North 7th Street, Suite 310
Phoenix, AZ 85014
602.566.7425
tfroderman@frlawgroup.com
sryan@frlawgroup.com
*Attorneys for Plaintiff
International Society for the
Protection of Mustangs and
Burros*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| International Society for the Protection of Mustangs and Burros, a non-profit organization,<br><br>Plaintiff,<br><br>vs.<br><br>United States Government, Department of Agriculture, Tom Vilsack as acting United States Secretary of Agriculture; United States Forest Service, Judy Palmer as acting U.S. Forest Supervisor,<br><br>Defendants. | Case No. _____<br><br>**COMPLAINT SEEKING DECLARATORY RELIEF**<br><br>(Jury Trial Demanded) |

Plaintiff, the International Society for the Protection of Mustangs and Burros ("ISPMB"), a non-profit organization, hereby alleges as follows:

## **NATURE OF THE ACTION**

1. This is an action for declaratory relief precipitated by the March 21, 2022 notice that the United States Forest Service planned the capturing and removal of "up to 20 unauthorized livestock", specifically, feral horses found on the Apache National Forest. In its notice, the Forest Service alleges that these horses are negatively impacting native plants

1

and animals, watersheds and ecosystems. Once captured, the horses will be impounded and offered for public sale. Upon information and belief, the majority of these horses will be purchased for slaughter and sold for their meat.

## JURISDICTION AND VENUE

1. Jurisdiction is proper in this action pursuant to 28 U.S.C. Section 1331 (federal question), 28 U.S.C. Section 2201 (declaratory judgment), the Administrative Procedure Act (5 U.S.C. Section 701, et seq.)("APA"), the National Environmental Policy Act (42 U.S.C. Section 4321, et seq.)("NEPA"), and 28 U.S.C. 1346 (United States as defendant).

2. Venue is appropriate in this Court pursuant to 28 U.S.C. Sections 1391(b) and (e).

## THE PARTIES

3. Plaintiff, the International Society for the Protection of Mustangs and Burros ("ISPMB"), is a non-profit organization formed for the purpose of furthering the protection and preservation of wild horses and burros. ISPMB is incorporated in the state of California. ISPMB was headquartered in Arizona from approximately 1993 until the year 2000 when it re-located its headquarters to South Dakota. ISPMB is the oldest wild horse and burro organization in the United States. Along with its first president, Wild Horse Annie, ISPMB was instrumental in securing and implementing the 1971 Wild Free-Roaming Horses and Burros Act. ISPMB is an affected and interested party in the State of Arizona.

4. Defendant, the U.S. Department of Agriculture, is a branch of the United States government which has been charged with the responsibility of overseeing the protection and management of wild free-roaming horses on National Forest System lands.

5. Defendant, Tom Vilsack, is named only in his capacity as the current Secretary of Agriculture, United States Government.

6. Defendant, U.S. Forest Service, is a governmental agency of the United States and is under the direction and control of the Secretary of Agriculture.

7. Defendant, Judy Palmer, is named only in her capacity as the acting U.S. Forest Supervisor for the Apache-Sitgreaves Forests. Her business office is located in Springerville, Arizona.

## GENERAL ALLEGATIONS

8. In passing the Wild Free-Roaming Horses and Burros Act of 1971, Congress declared that "wild free-roaming horses and burros are living symbols of the historic and pioneer spirit of the West; that they contribute to the diversity of life forms within the Nation and enrich the lives of the American people; and that these horses and burros are fast disappearing from the American scene. It is the policy of Congress that wild free-roaming horses and burros shall be protected from capture, branding, harassment, or death; and to accomplish this they are to be considered in the area where presently found, as an integral part of the natural system of the public lands." 16 U.S.C. § 1331 et seq.

9. Sometime prior to March 21, 2022, the U.S. Forest Service arbitrarily and without adequate investigation, determined that up to 20 horses living on the Apache National Forest were "unauthorized livestock" or feral horses and that their removal was necessary.

3

10. On or about March 21, 2022 the U.S. Forest Service released a notice memorializing their plan to remove the horses, a copy of which is attached as Exhibit "A" and incorporated herein.

11. An updated notice by the U.S. Forest Service, relative to this horse removal, changed the number of horses to be removed from "20" to "a number of unauthorized livestock", a copy of which is attached as Exhibit "B" and incorporated herein.

12. In addition to not disclosing how many horses they intend or have authorized to remove, the U.S. Forest Service notice regarding this removal does not identify where, within the Apache National Forest, these horses are located and living.

13. In her memo implementing what she refers to as the "Unauthorized Livestock Project", Forest Supervisor Judy Palmer authorizes generally, the removal of unauthorized livestock from the Apache National Forest.

14. The Apache National Forest consists of three Ranger Districts, Springerville, Alpine, and Clifton.

15. In a June 11, 2021 Forest Service "Determination Letter" presumably created or utilized to bolster the "unauthorized livestock" designation, Forest Supervisor Anthony Madrid makes conclusions about the origins of horses found within the Black River Watershed in the Alpine and Springerville Ranger Districts. A copy of this Letter is attached as Exhibit "C" and incorporated herein.

16. Similarly, a problematic June 2021 Assessment of the "legal status of the Apache Horses" by Forest Range Program Manager Ralph Fink, purported to establish the origins of horses found in the Black River region of the Apache National Forest, specifically

within the Alpine and Springerville Ranger Districts. A copy of the Assessment is attached as Exhibit "D" and incorporated herein.

17. While one could assume that the scope of this capture and removal, based on the Determination Letter and the Assessment, is to remove horses from the Black River region of the Apache National Forest within the Alpine and Springerville Ranger Districts, it is absolutely not clear from the U.S. Forest Service's notice nor from Ms. Palmer's Project memo which appear to provide for the removal of horses from the entire Apache National Forest.

18. Furthermore, the U.S. Forest Service has summarily concluded, without adequate investigation or documentation and in the face of contradictory evidence, that these horses are feral horses as opposed to protected wild free-roaming horses.[1]

19. There is Documentation of wild horses existing in the Apache National Forest as early as 1910 and throughout the following decades that the Forest Service appears to have ignored.

20. Upon information and belief, the U.S. Forest Service has failed historically and presently to meaningfully survey the Apache National Forest for the presence of wild free-roaming horses.

21. Upon information and belief, the U.S. Forest Service has not made any attempt historically or presently, via census, inventory, or any other type of survey, to determine how many of the horses slated for removal are branded or unbranded.

---

[1] Wild free-roaming horses are all "unbranded and unclaimed horses...and their progeny that have used lands of the National forest System on or after December 15, 1971, or do hereafter use these lands as all or part of their habitat, but does not include any horse...introduced onto the National Forest System on or after December 15, 1971, by accident, negligence, or willful disregard of private ownership." 36 C.F.R. § 222.60(b)(13).

5

22. The U.S. Forest Service has made an uninformed determination that these horses that are to be removed (the exact number of which remains unidentified) are feral and not subject to the protections under the Wild Horses and Burros Act of 1971.

23. The U.S. Forest Service has also failed to complete an environmental impact statement ("EIS"), as contemplated by the National Environmental Policy Act ("NEPA"), which would have provided an analysis of the environmental impact this horse removal would have.

24. The U.S. Forest Service is tasked with *protecting*, managing, and controlling the wild free-roaming horses on the lands of the National Forest System yet, upon information and belief, they have neglected, for decades, to properly account for or manage those horses living on the Apache National Forest.

25. Without adequate investigation, survey, census and analysis, this federal action risks harming beloved historical symbols of the West, ironically, by the very agency tasked with their protection.

26. Although the capture and removal of horses from the Apache National Forest has not officially commenced, the notice of removal remains active and unrescinded.

27. If removal is allowed, the horses will be offered for public sale. Upon information and belief a likely result is that the horses will be sold to locations where slaughter is legal, and they will be killed.

28. Absent the prayed for declaratory relief, ISPMB and its members will suffer irreparable harm.

# COUNT ONE

### (Declaration of a Violation of NEPA)

29. Plaintiff incorporates herein by reference the preceding paragraphs numbered 1 through 28.

30. The National Environmental Policy Act, or "NEPA", establishes a national policy for the environment through which it seeks to promote, among other things, the preservation of "important historic, cultural, and natural aspects of our national heritage, and maintain, wherever possible, an environment which supports diversity, and variety of individual choice". 42 U.S.C. § 4331(b)(4).

31. NEPA provides certain protections for the environment including the requirement that the "responsible agency official" submit a statement detailing the environmental impact a major federal action will have *prior* to that action taking place. 42 U.S.C. § 4321, et seq.

32. Specific relevant NEPA requirements include the following:

(2) [A]ll agencies of the Federal Government shall-***

**(C)** include in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on—

**(i)** the environmental impact of the proposed action,

**(ii)** any adverse environmental effects which cannot be avoided should the proposal be implemented,

**(iii)** alternatives to the proposed action,

**(iv)** the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity, and

> **(v)** any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented.
>
> Prior to making any detailed statement, the responsible Federal official shall consult with and obtain the comments of any Federal agency which has jurisdiction by law or special expertise with respect to any environmental impact involved. Copies of such statement and the comments and views of the appropriate Federal, State, and local agencies, which are authorized to develop and enforce environmental standards, shall be made available to the President, the Council on Environmental Quality and to the public as provided by section 552 of title 5, and shall accompany the proposal through the existing agency review processes;

33. The purpose of requiring an environmental impact statement ("EIS") "is to ensure agencies consider the environmental impacts of their actions in decision making.  It shall provide full and fair discussion of significant environmental impacts and shall inform decision makers and the public of reasonable alternatives that would avoid or minimize adverse impacts or enhance the quality of the human environment. Agencies shall focus on significant environmental issues and alternatives and shall reduce paperwork and the accumulation of extraneous background data.  Statements shall be concise clear and to the point, and shall be supported by evidence that the agency has made the necessary environmental analyses.  An environmental impact statement is a document that informs Federal Agency decision making and the public." 40 C.F.R. 1502.1.

34. A fundamental part of this protection is the opportunity for public comment, whereby the federal agency "affirmatively solicit[s] comments [from the public] in a manner designed to inform those persons or organizations who may be interested in or affected by the proposed action.

35. The Code of Federal Regulations ("CFR"), Section 1508 defines what constitutes a Major Federal action, providing that it "means an activity or decision subject to Federal control and responsibility…" and "may include new and continuing activities, including projects and programs entirely or partly financed, assisted, conducted, regulated, or approved by Federal agencies…". 40 C.F.R. 1508(q)(2).

36. The Code of Federal Regulations ("CFR"), Section 1508 provides examples of categories of actions that constitute Major Federal actions, which include, in part, the following:

>   (3) (ii) Adoption of formal plans, such as official documents prepared or approved by Federal agencies, which prescribe alternative uses of Federal resources, upon which future agency actions will be based.
>
>   (iii) Adoption of programs, such as a group of concerted actions to implement a specific policy or plan; systematic and connected agency decisions allocating agency resources to implement a specific statutory program or executive directive.
>
>   (iv) Approval of specific projects, such as construction or management activities located in a defined geographic area. Projects include actions approved by permit or other regulatory decision as well as Federal and federally assisted activities.

37. The U.S. Forest Service failed to prepare or issue an Environmental Impact Statement.

38. The U.S. Forest Service justifies failing to complete an Environmental Impact Statement by relying on a categorical exclusion which they claim exempts them from the EIS requirement.

39. A categorical exclusion as defined in the Code of Federal Regulations, "means a category of actions that the agency has determined, in its agency NEPA procedures,

normally do not have a significant effect on the human environment. 40 C.F.R. § 1508.1(d). Effect is defined in pertinent part as "changes to the human environment from the proposed action or alternatives that are reasonably foreseeable…[e]ffects include ecological…aesthetic, historic, cultural, economic, social, or health, whether direct, indirect, or cumulative. Effects may also include those resulting from actions which may have both beneficial and detrimental effects, even if on balance the agency believes that the effects will be beneficial." 40 C.F.R. § 1508.1(g), (g)(4). Finally, "human environment" is defined as "comprehensively the natural and physical environment and the relationship of present and future generations of Americans with that environment." 40 C.F.R. § 1508.1(m).

40. Forest Supervisor Judy Palmer documents, in a December 15, 2021 memo, the U.S. Forest Service's reliance on the categorical exclusion found at 7 C.F.R. § 1b.3(5) which provides that "[c]ivil and criminal law enforcement and investigative activities" are determined not to have a "significant individual or cumulative effect on the human environment." A copy of the Memo is attached as Exhibit "E" and incorporated herein.

41. The actions of capturing, permanently removing, and selling horses living on the Apache National Forest constitute far more than just a civil or criminal investigative activity. Those actions, in fact, clearly fit the definition of a Major Federal Action which necessitates compliance with NEPA provisions, including the requirement that an EIS be prepared.

42. The ordered horse removal also fails to fall within the definition of what constitutes a categorical exclusion. Reliance on this categorical exclusion is nothing but an

attempt to remove the horses without engaging in the due diligence required under the law – in other words, a quick fix.

43. Actions to remove the horses from the Apache National Forest could have a significant effect on the surrounding environment and on the many people that study, view, and enjoy these horses.

44. The Forest Service did not provide an analysis of any alternative options to removal.

45. The Defendants have failed to comply with NEPA before ordering the removal of horses from the Apache National Forest.

46. Under the Declaratory Judgment Act, 28 U.S.C. 2201, an actual controversy has arisen between Plaintiff and Defendants involving the interpretation of certain federal statutes and acts within this Court's jurisdiction.

47. Absent the prayed for declaratory relief, ISPMB and its members will suffer immediate and irreparable harm.

## COUNT TWO
**(Declaration of a Violation of the Wild Free-Roaming Horses and Burros Act of 1971**

48. The Plaintiff incorporates herein by reference the preceding paragraphs numbered 1 through 47.

49. Under the Wild Free-Roaming Horses and Burros Act of 1971, the Secretary of Agriculture is "directed to protect and manage wild free-roaming horses as components of the public lands…". 16 U.S.C. § 1333(a).

50. The term "wild free-roaming horses and burros" is specifically defined under the 1971 Act to mean "<u>all unbranded and unclaimed</u> horses and burros on public lands of the United States." (Emphasis added). 16 U.S.C. Section 1333(a).

51. The 1971 Act also states that the Secretary "shall manage wild free-roaming horses and burros in a manner that is designed to achieve and maintain a thriving natural ecological balance on the public lands." 16 U.S.C. § 1333(a). The Secretary "shall consider the recommendations of qualified scientists in the field of biology and ecology, some of whom shall be independent of both Federal and State agencies…" and the Secretary may "designate and maintain specific ranges on public lands as sanctuaries for their protection and preservation..." 16 U.S.C. § 1333(a).

52. The 1971 Act further provides that the Secretary "shall maintain a current inventory of wild free-roaming horses and burros on given areas of the public lands." 16 U.S.C. § 1333(b).

53. Section 1338a of the 1971 Act provides that while the Secretary may use or contract for the use of motor vehicles for the purpose of transporting captured animals, such use can only be undertaken after a public hearing, among other things.

54. The Defendants have made an uninformed and unilateral decision to remove an unidentified number of horses from the Apache National Forest, irresponsibly categorizing them as "unauthorized livestock" without performing their due diligence.

55. The decision to capture and remove horses from the Apache National Forest was made without an inventory or accounting of the horses to determine their status as wild or domestic trespass, branded versus unbranded.

56. Defendant's decision to remove the horses is unsupported by any meaningful investigation, evidence, or inventory. The U.S. Forest Service failed to support their conclusion that the horses they intend to capture and remove are not wild free-roaming horses or offspring of those horses.

57. Upon information and belief, the U.S. Forest Service plans to utilize motor vehicles during the planned horse removal for the purpose of transporting the captured animals.

58. Upon information and belief, no public hearing was held prior to the decision to capture and remove these horses.

59. The U.S. Forest Service relies on the *Assessment of Horses on the Apache National Forest* to lend some support to its conclusion that the horses are "unauthorized livestock" however the Assessment is problematic and is premised on "[r]ecords [that] indicate there were no unclaimed horses on the Apache National Forest at the time the [Wild Horse and Burro Act] was passed." Exhibit "D".  This assertion is made without citation and contradicts historical accounts that document the presence of horses well before the passage of the Act.  Further, the U.S. Forest Service had not conducted any inventory or census prior to, at the time of, or for decades after the passage of the Act.

60. The Defendants have failed to manage the horses in the Apache National Forest.

61. The Defendants have failed to conduct an inventory or census the number, types, age, and condition of the horses in the Apache National Forest.

62. The Defendants have failed to hold a public hearing for comment on the decision to use motor vehicles in the capture and transport of these horses.

63. The Defendants have failed to make an effort to segregate any wild horses from domestic horses before ordering removal of all horses from the Apache National Forest.

64. Under the Declaratory Judgment Act, 28 U.S.C. 2201, an actual controversy has arisen between Plaintiff and Defendants involving the interpretation of certain federal statutes and acts within this Court's jurisdiction.

65. Absent the prayed for declaratory relief, ISPMB and its members will suffer immediate and irreparable harm.

## COUNT THREE
### (Declaration of a Violation of the Administrative Procedures Act)

66. The Plaintiff incorporates herein by reference the preceding paragraphs numbered 1 through 65.

67. The Defendants have violated the Administrative Procedures Act by their actions and failures to act.

68. The Administrative Procedures Act allows for judicial review of certain federal agency actions. In particular, a reviewing court "shall hold unlawful and set aside agency action, findings, and conclusions found to be- (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law…(D) without observance of procedure required by law." 5 U.S.C. § 706(2)(A)(D).

69. The U.S. Forest Service's decision to remove an unidentified number of horses from the Apache National Forest without following NEPA requirements, without first conducting a full investigation or study in consultation with independent scientists,

ecologists, and biologists, and without any inventory or census or management for decades is arbitrary, capricious, an abuse of discretion, and not in accordance with the law.

70.     Under the Declaratory Judgment Act, 28 U.S.C. 2201, an actual controversy has arisen between Plaintiff and Defendants involving the interpretation of certain federal statutes and acts within this Court's jurisdiction.

71.     Absent the prayed for declaratory relief, ISPMB and its members will suffer immediate and irreparable harm.

**COUNT FOUR**
**(Declaration that the Horses Are Wild Free-Roaming Horses entitled to Protection under the Wild Free-Roaming Horses and Burros Act of 1971)**

72.     The Plaintiff incorporates herein by reference the preceding paragraphs numbered 1 through 71.

73.     Evidence exists indicating that, as far back as 1910, wild horses are and have been living in the Apache National Forest.

74.     The Wild Free-Roaming Horses and Burros Act of 1971 defines Wild Free-Roaming Horses as "all unbranded and unclaimed horses…on public lands of the United States." 16 U.S.C. § 1333(a).

75.     Those unbranded unclaimed horses on the Apache National Forest, including, the Springerville, Alpine, and Clifton Ranger Districts and those horses identified by the U.S. Forest Service as found in the Black River region of the Apache National Forest, specifically within the Alpine and Springerville Ranger Districts, satisfy the definition of Wild Free-roaming Horses and are entitled to those protections afforded under this act.

15

76.     Under the Declaratory Judgment Act, 28 U.S.C. 2201, an actual controversy has arisen between Plaintiff and Defendants involving the interpretation of certain federal statutes and acts within this Court's jurisdiction.

77.     Absent the prayed for declaratory relief, ISPMB and its members will suffer immediate and irreparable harm.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

A.     Plaintiff seeks a declaration that the Department of Agriculture and U.S. Forest Service, and their respective agents and acting representatives in office, have violated the provisions of NEPA and have an obligation to conduct an environmental assessment and/or impact study before ordering the removal of horses from the Apache National Forest.

B.     Plaintiff seeks a declaration that the Department of Agriculture and U.S. Forest Service, and their respective agents and acting representatives in office, have violated the provisions of the Wild Free-Roaming Horse and Burros Act of 1971 and that they have an obligation to comply with said provisions of the Act.

C.     Plaintiff seeks a declaration that the Department of Agriculture and U.S. Forest Service, and their respective agents and acting representatives in office, have violated the provisions of the Administrative Procedures Act, specifically, that their decision to remove horses from the Apache National Forest was made in an arbitrary and capricious fashion and that they have an obligation to comply with the provisions contained within the Act.

D. Plaintiff seeks a declaration that the unbranded unclaimed horses that live on the Apache National Forest are Wild Free-Roaming horses entitled to the protections provided in the Wild Free-Roaming Horses and Burros Act of 1971.

E. For an award of Plaintiff's reasonable costs, fees and expenses pursuant to 28 U.S.C. § 2412 *et seq*.

F. For any other relief the Court or jury deems appropriate.

## JURY TRIAL DEMAND

Plaintiffs hereby demand a trial by jury.

DATED this 28th day of June 2022.

FR LAW GROUP PLLC

By: _____
Troy B. Froderman, Esq.
Scott C. Ryan, Esq.
4745 N 7th Street, Suite 310
Phoenix, AZ 85014
*Attorneys for Plaintiff*

**FILED** this 28th day of June 2022, with the Clerk of the Maricopa County Superior Court

By:/s/ Sarah Frith