Troy B. Froderman (012717)
Scott C. Ryan (026791)
FR LAW GROUP PLLC
4745 North 7th Street, Suite 310
Phoenix, AZ 85014
602-566-7425
tfroderman@frlawgroup.com
sryan@frlawgroup.com
*Attorneys for Plaintiff*
*International Society for the*
*Protection of Mustangs and*
*Burros*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| International Society for the Protection of Mustangs and Burros, a non-profit organization,<br><br>Plaintiff,<br><br>vs.<br><br>United States Government, Department of Agriculture, Tom Vilsack as acting United States Secretary of Agriculture; United States Forest Service, Judy Palmer as acting U.S. Forest Supervisor,<br><br>Defendants. | Case No. 3:22-cv-08114-SPL<br><br>**APPLICATION FOR TEMPORARY RESTRAINING ORDER (WITHOUT NOTICE) AND REQUEST FOR ISSUANCE OF ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT BE ISSUED**<br><br>**(HON. STEVEN P. LOGAN)** |

Pursuant to Rule 65(b) and 65(d) of the Federal Rules of Civil Procedure, Plaintiff, International Society for the Protection of Mustangs and Burros ("ISPMB"), a non-profit organization, respectfully requests that this Court issue an immediate Temporary Restraining Order ("TRO"), without notice, preventing Defendants from holding the sale, currently scheduled for July 14th, 20th, and 21st, 2022, of horses captured and impounded

1

from the Apache National Forest. Plaintiff further requests that this Court issue an Order to Show Cause why a preliminary injunction should not be issued restraining Defendants from selling the horses until a hearing can be held and the record may be fully developed.

Plaintiff requests the issuance of an immediate TRO until such time as a hearing may be held because, as alleged in the Verified First Amended Complaint, attached and incorporated hereto as "**Exhibit A**", Plaintiff asserts that the Defendants have improperly, without adequate investigation and in violation of several federal laws, determined the captured horses to be "unauthorized livestock" as opposed to federally protected wild free-roaming horses. If the sale is allowed to proceed before these issues are fully and fairly resolved, Plaintiff will suffer immediate and irreparable harm, namely, at best the horses will be permanently removed from the public lands of the Apache National Forest and at worst, they will be sold for slaughter. Plaintiff seeks this TRO without notice due to the Defendants' apparent decision to move forward with the sale after having been served with Plaintiff's Complaint Seeking Declaratory Relief (**Document 1.**). Plaintiff further seeks this TRO without notice due to the immediacy of the sale and the limited opportunity Plaintiff will have to effectuate notice. Plaintiff will make attempts to provide notice, formal and/or informal in the limited time it has.

This Application is supported by the following Memorandum of Points and Authorities, the Verified First Amended Complaint and all Exhibits attached hereto.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.     Factual Background**

2

Plaintiff is a non-profit organization formed for the purpose of furthering the protection and preservation of wild horses and burros. Plaintiff has spent decades advocating for, studying, and enjoying the wild free-roaming horses found on the National Forest Lands in Arizona, including those found on the Apache-Sitgreaves Forests.

Plaintiff became aware of the U.S. Forest Service's plan to capture horses found on the Apache National Forest and offer them for public sale. Plaintiff is aware of other prior unlawful attempts by the U.S. Forest Service to remove horses from the Apache-Sitgreaves National Forests and has been involved in and successfully challenged a prior proposed U.S. Forest Service removal action. In late March of 2022 the U.S. Forest Service released a notice indicating their intent to remove 20 horses living on the Apache National Forest. A subsequent notice by the U.S. Forest Service indicated their continued intent to remove horses from the Apache National Forest, however this notice indicated their planned removal of a "number" of horses instead of "20" and neither notice provided the intended date or timeframe of capture and removal.

Plaintiff filed a Complaint Seeking Declaratory Relief relative to the planned capture and removal of the horses from the Apache National Forest on June 28, 2022. (**Document 1**.) Service was effectuated on U.S. Department of Agriculture and its acting United States Secretary of Agriculture Tom Vilsack on June 30, 2022 (**Documents 7, 8**); service was effectuated on the U.S. Forest Service and acting Forest Service Supervisor Judy Palmer on July 6, 2022. (**Documents 9, 10.**) On July 8, 2022 a notice was posted on the U.S. Forest Service's website advertising the impending July 14th, 20th, and 21st, 2022 sale of

3

impounded livestock which, upon information and belief, indicates that the U.S. Forest Service has already captured and impounded horses from the Apache National Forest.

Upon learning of the impending sale, Plaintiff filed a Verified First Amended Complaint (**Exhibit "A"**) requesting additional relief in the form of a temporary restraining order, injunctive relief, and a writ of mandamus along with this Application for a Temporary Restraining Order (without notice) and Request for Issuance of Order to Show Cause Why a Preliminary Injunction Should Not Be Issued.

Plaintiff further incorporates by reference the allegations set forth in its Verified First Amended Complaint.

## II.     Legal Standard

A temporary restraining order is an "extraordinary remedy that may only be awarded upon a clear showing that the Plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  The standard for evaluating a request for a temporary restraining order and a preliminary injunction are the same. *Alliance for Wild Rockies v. Pierson*, 550 F. Supp.3d 894, 898 (D. Idaho 2021).  The relevant factors that Plaintiff must establish are (1) that Plaintiff is likely to succeed on the merits; (2) absent the requested relief, Plaintiff is likely to suffer irreparable harm; (3) the balance of equities tips in Plaintiff's favor; and (4) that the injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

In balancing the four factors, and in particular, in evaluating whether a Plaintiff is likely to succeed on the merits, courts have utilized the "serious questions" test whereby a temporary restraining order or preliminary injunction has been found appropriate where

serious questions exist relative to the merits of the case, the balance of hardships tips sharply towards Plaintiff and the remaining two elements have been met. *See Alliance For the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-1132 (9th Cir. 2011). In this context,

> 'serious questions' refers to questions which cannot be resolved one way or the other at the hearing on the injunction and as to which the court perceives a need to preserve the status quo lest one side prevent resolution of the questions or execution of any judgment by altering the status quo. Serious questions are substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation. Serious questions need not promise a certainty of success, nor even present a probability of success, but must involve a fair chance of success on the merits.

*Alliance for Wild Rockies v. Pierson*, 550 F. Supp.3d 894, 898 (D. Idaho 2021)(quoting *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (internal quotation marks omitted).

**III.   Argument**

Plaintiff, in its Complaint, has asserted that Defendants' capture and removal of horses from the Apache National Forest is done in violation of provisions of the National Environmental Policy Act ("NEPA"), the Wild Free-Roaming Horses and Burros Act of 1971, and the Administrative Procedures Act. Plaintiff further asserts that evidence exists

that the subject horses satisfy the definition of Wild Free-roaming Horses and are entitled to protection under the Wild Free-Roaming Horses and Burros Act of 1971.

As further alleged in the Verified First Amended Complaint, Defendants, in failing to comply with various provisions of the National Environmental Policy Act ("NEPA"), rely on a categorical exclusion which they assert exempts them from NEPA compliance. Specifically, Defendants rely on 7 C.F.R. § 1b.3(5) which exempts those actions constituting "civil and criminal law enforcement and investigative activities" which are determined not to have a "significant individual or cumulative effect on the human environment."  (*See* Verified First Amended Complaint, Exhibit "E".)

As further alleged in the Verified First Amended Complaint, Defendants have violated provisions of the Wild Free-Roaming Horses and Burros Act of 1971 in that they have, for decades, failed to manage or account for the Wild Free-roaming horses that live on the Apache National Forest and have failed to consistently or effectively conduct inventory or census as required under the law.  They now seek to use their lack of adequate investigation to support their conclusion that Wild Free-roaming horses did not exist in the Apache National Forest until after 1971 thereby stripping them of protections of the Wild Free-Roaming Horses and Burros Act of 1971.  (*See, e.g.*, 2015 email from U.S. Forest Service employee Steven Johnson acknowledging that no horse surveys were conducted in the Apache Forest between 1974 and 2013, attached hereto as **Exhibit "B"**.)

As further alleged in the Verified First Amended Complaint, Defendants have violated the Administrative Procedures Act in that their decision to remove a "number" of horses from the Apache National Forest without adhering to the provisions under NEPA and

without conducting a proper census or inventory or full investigation is arbitrary, capricious, an abuse of discretion, and not in accordance with the law.

Plaintiff also asserts that Wild Free-roaming horses have lived on and maintained a presence on Apache National Forest Land since prior to the enactment of the Wild Free-Roaming Horses and Burros Act of 1971 thereby entitling these horses to protections under the act, including a proper inventory and management. (*See, e.g.,* Anecdotal evidence from newspaper article documenting presence of wild horses in Apache National Forest, attached hereto as **Exhibit "C"**.)

### A. Plaintiff is Likely to Succeed on the Merits

Plaintiff has alleged multiple violations of federal law. Plaintiff need only show a likelihood to succeed on one of its claims to satisfy this element. *See Compass Bank v. Hartley*, 430 F.Supp.2d 973, 983 (D. Ariz. 2006). The allegations set forth in the Verified First Amended Complaint are sufficient to demonstrate that Plaintiff is likely to succeed or in the alternative that serious questions exist as to the merits of the case such that should the court find that the balance of hardships tips sharply towards Plaintiff and the remaining two elements have been met, a temporary restraining order and preliminary injunction is appropriate.

Take, for example, the Categorical Exclusion that Defendant relies on to justify non-compliance with the provisions of NEPA. By its plain language, the categorical exclusion is to be used for "civil and criminal law enforcement and investigative activities" which are determined not to have a "significant individual or cumulative effect on the human environment." The removal of these horses from public lands constitutes far more than an

investigative activity, it constitutes the permanent removal and deprivation of treasured and federally protected historic symbols of the West without the benefit of due diligence. Additionally, removal of these horses absolutely has a significant individual or cumulative effect on the human environment, specifically aesthetic, historic, cultural, economic, social and health effects.

The U.S. Forest Service cannot provide thorough and reliable historical census data because it has failed to historically inventory unbranded unclaimed horses found on the Apache National Forest, a duty mandated to the Secretary of Agriculture by the Wild Free-Roaming Horses and Burros Act of 1971). The U.S. Forest Service's lack of inventory also demonstrates their lack of horse management.  They have failed to identify, account for, and plan for the unbranded unclaimed horses found on the Apache National Forest and are now utilizing a "quick fix" to rid themselves of a management problem – declare they are unauthorized livestock and simply sell them.

Plaintiff also seeks, through their Verified First Amended Complaint, to protect the unbranded unclaimed horses living on the Apache National Forest asserting that they satisfy the definition of "Wild Free-Roaming" horses under the Wild Free-Roaming Horses and Burros Act of 1971.  Plaintiff asserts that evidence exists to establish that Wild Free-Roaming horses have lived on the Apache National Forest lands for decades, including prior to the 1971 act, which would grant them protection under the law.   Prior to permanent disposal of these horses, Defendants have an obligation under the law to adequately and legally differentiate between Wild Free-Roaming horses and unauthorized livestock and they simply have not done so.

These horses deserve the process due them under the law, laws *specifically* created to protect their existence and their future.  Plaintiff asserts that the allegations sufficiently establish the likelihood of their success on the merits of at least one of their claims, and that the issues raised in its Complaint raise serious questions that ought to benefit from a fully developed record.

### B. Irreparable Harm is Likely Absent Relief

There is no doubt that irreparable harm will be done absent relief in this case.  The horses have already been removed from their home and are set to be sold.  This is not an issue whereby monetary damages would sufficiently address Plaintiff's claims.  Absent relief, the horses will permanently be erased from the Apache National Forest.

### C. The Balance of Equities Tips in Favor of the Plaintiff

Given the severity of consequences absent relief, and in consideration of the fact that the law requires Defendants to protect and manage these horses as part of their duties, Plaintiff asserts that the balance of equities easily and heavily tips in favor of Plaintiff.

### D. Granting the Injunction is in the Public Interest

Granting Plaintiff's request for a temporary restraining order and preliminary injunction is in the Public Interest.  One only has to google "wild horses in Arizona" to discover the fierceness of and wide-spread public interest in the preservation of these animals.  The Wild Free-Roaming horses are a representation of the West and a beloved part of the historic and cultural fabric of Arizona.  Further, the pursuit of diligence in ensuring that the government upholds the processes put in place to protect the "natural and physical environment and the relationship of present and future generations of Americans

with that environment" (as 40 C.F.R. § 1508.1(m) defines "human environment") will always be in the public interest.

  E. <u>No Bond or a Nominal Bond is Appropriate</u>

  Plaintiff, by the underlying action and this Application, is seeking enforcement of statutes that benefit and promote the public interest.  Plaintiff is a non-profit organization whose ability to pursue judicial review in this case would be hindered by a substantial bond. This Court has discretion to waive bond or in the alternative or order a nominal amount. *See People of State of Cal. ex rel. Van De Kamp v. Tahoe Regional Planning Agency*, 766 F.2d 1319 (9th Cir. 1985). Plaintiff asks that bond be waived or ordered in a nominal amount.

**IV.** **<u>Conclusion</u>**

  Plaintiff recognizes that the remedy it seeks from this Court is an extreme remedy to be granted only in certain prescribed situations.  Plaintiff asserts that this is one of those situations.  Plaintiff had hoped that the filing of its action on June 28, 2022 would serve to halt any permanent federal action until such time as these issues could be resolved, however the July 8th notice of impending sale has removed any other alternative avenue as inaction could result in irreparable injury.

  For the foregoing reasons, Plaintiff respectfully requests that this Court issue a TRO restraining Defendants from selling any horses captured and removed from the Apache

/ / /

/ / /

/ / /

National Forest and that the horses be safely returned to their home pending the outcome of this case.

      **RESPECTFULLY SUBMITTED** this 12th day of July 2022.

                                    FR LAW GROUP PLLC

                                    By: _____
                                          Troy B. Froderman, Esq.
                                          Scott C. Ryan, Esq.
                                          *Attorneys for Plaintiff*

**FILED** this 12th day of July 2022, with the Clerk of the United States District Court, District of Arizona

By: /s/ Sarah Frith